EO-6
RECEIVED FOR DOCKETING

DOCKETED
AUG 1 1 2004

U.S. DISTRICT COURT

FILED
AUG - 9 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

VERNON THOMPSON )
)
    Plaintiff, )
)
v. )
)
CITY OF CHICAGO, a municipality; PHILIP J. )
CLINE, in his official capacity; CITY OF )
CHICAGO POLICE OFFICER J. CZARNIK, )   Case No. 04 C 3490
BADGE NO. 19270, in his official and individual )
capacities; CITY OF CHICAGO POLICE OFFICER )  Judge Joan H. Lefkow
D. WISZ, BADGE NO. 13553, in his official and )
individual capacities; COUNTY OF COOK, )   **JURY TRIAL DEMANDED**
ILLINOIS, a local public entity; MICHAEL )
SHEAHAN, in his official capacity; CALLIE )
BAIRD, in her official capacity; MS. MARTIN, in )
her official and individual capacities; LT. BRYANT, )
in his official and individual capacities; and JOHN )
DOES 1-20, in their official and individual )
capacities. )
)
    Defendants. )

## FIRST AMENDED COMPLAINT

    Plaintiff, Vernon Thompson, by and through his attorneys, complains against the

above-named defendants, and states as follows:

### INTRODUCTION

    1.    This action arises out of personal injuries suffered by Plaintiff Vernon

Thompson as the result of the use of excessive force by officers of the Chicago Police

Department and the subsequent failure of officers and employees of the Chicago Police



Department and Cook County Department of Corrections to provide appropriate and timely medical treatment for the serious injuries suffered by the Plaintiff.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over Plaintiff Thompson's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a). This Court has supplementary jurisdiction over Plaintiff Thompson's state law claim pursuant to 28 U.S.C. § 1391(b).

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because the events giving rise to Thompson's claims occurred in Cook County, Illinois.

## PARTIES

4.      Plaintiff Vernon Thompson is, and was as at all times relevant to this complaint, a citizen of the United States and a resident of the City of Chicago, located in Cook County, Illinois. From about December 17, 2003 to the present, Plaintiff Thompson has been a pretrial detainee at the Cook County Jail.

5.      On information and belief, Defendant Callie Baird was, at all times relevant to this complaint, employed as the Executive Director of the Cook County Department of Corrections. Defendant Baird is sued in her official capacity.

6.      On information and belief, Defendant Bryant was, at all times relevant to this complaint, employed by the Cook County Department of Corrections as a sheriff's lieutenant in Division V of the Cook County Jail. Defendant Bryant is sued in his official and individual capacities.

7.      Defendant City of Chicago is a municipality duly incorporated under the laws of the State of Illinois that maintains, manages, and/or operates the Chicago Police Department.

8.      On information and belief, Defendant Philip J. Cline was, at all times relevant to this complaint, the Superintendent of the Chicago Police Department. Defendant Cline is sued in his official capacity.

9.      Defendant County of Cook is a local public entity under the laws of the State of Illinois that maintains, manages, and operates the Cook County Jail.

10.     On information and belief, Defendant J. Czarnik was, at all times relevant to this complaint, employed as an officer, badge # 19270, of the Chicago Police Department. Defendant J. Czarnik is sued in his official and individual capacities.

11.     On information and belief, Defendant Martin was, at all times relevant to this complaint, employed by the Cook County Sheriffs Department at the Cook County Jail in Chicago, Illinois and was responsible for providing medical care to inmates in Division V. Defendant Martin is sued in her official and individual capacities.

12.     On information and belief, Defendant Michael Sheahan was, at all times relevant to this complaint, the Cook County Sheriff and has ultimate authority over the Cook County Department of Corrections. Defendant Sheahan is sued in his official capacity.

13.     On information and belief, Defendant D. Wisz was, at all times relevant to this complaint, employed as an officer, badge # 13553, of the Chicago Police Department. Defendant D. Wisz is sued in his official and individual capacities.

14.     Defendant John Does 1-5 (whose names are unknown at this time) are employed by the Chicago Police Department and were present and/or participated in the beating of Plaintiff Thompson on December 15, 2003. Defendant John Does 1-5 are being sued in their official and individual capacities.

15.     Defendant John Does 6-20 (whose names are unknown at this time) are employed by the Cook Country Department of Corrections, the Cook County Sheriff's Office, and/or Cermak and were responsible for Plaintiff Thompson's failure to receive appropriate and timely medical treatment for his injury. Defendant John Does 6-20 are being sued in their official and individual capacities.

## **BACKGROUND**

### **December 15, 2003 Arrest and Beating by Chicago Police Officers**

16.     On December 15, 2003, Plaintiff Thompson lived at 1159 North Larrabee in Chicago, Illinois.   On that evening, he was visiting at his friend Albert Smith's apartment at 1161 N. Larrabee #603, Chicago. At or around 9:30 p.m., both Smith and the Plaintiff heard a knock on the door, Smith asked who it was and the answer was "Pooh." Smith opened the door to find Defendants Czarnik and Wisz, both Chicago Police Officers.

17.     After Smith opened the door, Defendants Czarnik and Wisz rushed into the apartment, ordered Smith to "sit his fat ass down," and began searching various rooms in the apartment. The officers also strip-searched Smith. Their various searches failed to uncover any illegal activities.

-4-

18.     Defendants Czarnik and Wisz also questioned Plaintiff Thompson and through a name check, determined that the Plaintiff was currently released on bond pending trial of a drug charge.

19.     After the foregoing searches and failing to discover any illegal activity, Defendants Czarnik and Wisz stated that they had entered the wrong apartment and left.

20.     At or around 10:00 p.m. that same night, Plaintiff Thompson left Mr. Smith's apartment to pick up dinner. When he returned to the building, Plaintiff had to use the stairs because the elevator was broken. The Plaintiff noticed a young male in the stairwell taking drugs. The Plaintiff approached the young man and told him that the residents of the building would "kick his ass" if they caught him taking drugs in the building. At this time, Defendants Czarnik and Wisz came out of the hallway and threw the Plaintiff to the ground. The young man fled. The Plaintiff did not attempt to flee or resist arrest.

21.     Other officers from the Chicago Police Department, Defendant John Does 1-5, arrived and kicked, punched, and beat Plaintiff Thompson. One or more of Defendant John Does 1-5 twisted Plaintiff Thompson's arm behind his back and handcuffed him, at which time, Plaintiff Thompson felt a severe pain in his shoulder that felt like a rubber band popped. After Plaintiff Thompson was handcuffed, an officer, upon information and belief Defendant Wisz, jumped on Plaintiff Thompson's back with his knee.

22.     At no time did any of the Defendant police officers who were present during these events attempt to intervene to prevent harm from occurring to Plaintiff Thompson although each of them had a realistic opportunity to do so.

23.     After being beaten, Plaintiff Thompson was taken to the Chicago Police Department station in the North 1100 block of Larrabee Street in Chicago, where he sat in a holding cell in intense pain, and repeatedly asked for medical treatment.

24.     At about 12:00 a.m. midnight on December 16, 2003, Plaintiff Thompson was taken to the emergency room at Lincoln Park Hospital. The treatment at the hospital was not adequate for his condition.

25.     Plaintiff Thompson was then returned to the holding cell at the Chicago Police Department Station on Larrabee Street, where he remained for an additional 48 hours in continuous pain.

**December 17, 2003 Transfer to Cook County Jail**

26.     On December 17, 2003, Plaintiff Thompson was transferred from the Chicago Police Station on Larrabee Street to the Cook County Jail, Division V. An employee in the medical receiving area of the Cook County Jail ordered an x-ray for Plaintiff Thompson for December 18, 2003 after noticing that Plaintiff Thompson's shoulder was out of socket. The scheduled x-ray was not administered as ordered.

27.     During the next several weeks, the Plaintiff was housed in Division V, where he repeatedly informed defendant Martin and other John Doe defendants of his pain and injury but his requests for treatment were denied.

**January 12, 2004: Plaintiff Thompson First Allowed to See a Doctor at Cook County Jail**

28.     On or about January 12, 2004, Plaintiff Thompson was first allowed to attend a sick call at the Cook County Jail, where he was seen by Dr. Ali, who confirmed that the

-6-

Plaintiff's arm was out of socket. Dr. Ali scheduled an appointment with a specialist for the very

next day, January 13, to see if the injury could be corrected.

29.     On or about January 13, 2004, Plaintiff Thompson was x-rayed and

examined by a specialist at Cermak Health Services of Cook County ("Cermak"). The specialist

told Plaintiff Thompson that surgery was now needed because 28 days had passed since the

injury, without treatment.

**January 21, 2004: Missed Appointments for Surgery**

30.     Dr. Ali scheduled surgery for Plaintiff Thompson on the morning of

January 21, 2004. On the morning scheduled for surgery, Plaintiff Thompson was left in his cell

and not taken for surgery, as had been ordered. At approximately 9:30 a.m. that day, Dr. Ali

spoke with Defendant Bryant about the situation, and on information and belief, Dr. Ali told

Defendant Bryant that the plaintiff's surgery was being rescheduled for 1:00 p.m. that same day

and that Plaintiff Thompson had to be brought immediately that morning to Cermak for surgical

preparation in advance of the surgery.

31.     At 10:30 am that same day, the Plaintiff was handed over to a set of

Defendants Does 6-20, who took the Plaintiff to Cermak. At Cermak, the plaintiff was

transferred to another set of Defendant Does 6-20, who were supposed to take the Plaintiff to the

area for surgical preparation but instead took the Plaintiff to a holding cell and told the Plaintiff

that they were going to lunch.

32.     Plaintiff Thompson remained in the holding cell at Cermak until

approximately 12:55 p.m. on January 21, 2004, when he was finally transferred to an area for

surgical preparation. When the Plaintiff arrived in the surgery area, the doctor inquired where he

had been and said that they had been expecting the plaintiff since 9:30 a.m. The doctor informed Plaintiff Thompson that he would not be able to undergo the scheduled surgery because there was no time to properly prepare him for surgery.

33.    Plaintiff Thompson's surgery was rescheduled for January 28, 2004.

**January 28, 2004 Surgery Performed Approximately Six Weeks After Injury Occurred**

34.    Plaintiff Thompson underwent surgery for the foregoing injuries on about January 28, 2004. The surgery involved a 8-10 inch incision on Plaintiff Thompson's left shoulder. This incision left a permanent scar, Plaintiff Thompson continues to suffer from limited mobility in his left arm, continues to take pain medication, and has difficulty performing routine daily tasks.

**Grievance Procedures**

35.    Plaintiff Thompson exhausted his administrative remedies. On or about January 23, 2004, Plaintiff Thompson filed a grievance with the Cook County Department of Corrections to expedite surgery. Plaintiff Thompson received a response to his grievance on February 9, 2004, after the surgery was performed. Plaintiff Thompson appealed the response to his grievance on February 9, 2004. On February 25, 2004, Plaintiff Thompson was notified that the Appeals Board did not accept his request for an appeal. No other administrative remedies are available.

**Investigation by the Chicago Police Department Office of Professional Standards**

36.    At some time after December 15, 2003, the Plaintiff filed a complaint with the Chicago Police Department's Office of Professional Standards ("OPS") regarding the circumstances surrounding his December 15, 2003 arrest. After the filing, Plaintiff Thompson

-8-

was interviewed by a representative of the OPS for approximately two hours. On information and belief, Plaintiff Thompson has not been notified of the status or outcome of the OPS's investigation.

## COUNT I
### Section 1983 Claim Against Defendants Czarnik, Wisz, and John Does 1-5 for Use of Excessive Force in Violation of the Fourth Amendment

37.   The allegations of paragraphs 1 through 36 are incorporated herein by reference.

38.   Plaintiff Thompson has a clearly established right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from excessive force.

39.   As set forth above, Defendants Czarnik, Wisz, and John Does 1-5 used excessive and brutal force against Plaintiff Thompson on December 15, 2003. In light of the circumstances confronting Defendants Czarnik, Wisz, and John Does 1-5, their use of force was excessive and unreasonable.

40.   Defendants Czarnik, Wisz, and John Does 1-5, while acting under color of state law, intentionally, maliciously, recklessly, and/or with deliberate indifference or reckless disregard deprived Plaintiff Thompson of his constitutionally protected right to be free from the use of excessive force.

41.   As a direct and proximate result of Defendants Czarnik's, Wisz's, and John Does 1-5's violations of the Fourth and Fourteenth Amendments, including use of excessive force, Plaintiff Thompson suffered substantial personal injuries and is entitled to damages under 42 U.S.C. § 1983.

## COUNT II
### Section 1983 Claim Against Defendants Czarnik, Wisz, and John Does 1-5 for Failure to Intervene in the Deprivation of Plaintiff Thompson's Constitutionally Protected Rights

42.     The allegations of paragraphs 1 through 41 are incorporated herein by reference.

43.     Plaintiff Thompson has a clearly-established right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the use of excessive force.

44.     Defendants Czarnik, Wisz, and/or John Does 1-5, while acting under color of state law, failed to intervene to prevent or stop the use of excessive force by Chicago Police Officers against Plaintiff Thompson, despite the fact that they knew that excessive force was being used against Plaintiff Thompson, thereby depriving the Plaintiff of rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the use of excessive force because of the failure to intervene.

45.     As a direct and proximate result of Defendants Czarnik's, Wisz's, and/or John Does 1-5's deprivations of rights, including the foregoing failure to intervene, Plaintiff Thompson suffered substantial personal injuries and is entitled to damages under 42 U.S.C. § 1983.

## COUNT III
### Section 1983 Claim Against Defendants City of Chicago and Cline for a Custom and Practice of Use of Excessive Force During Arrests and for Failure to Establish Appropriate Procedures To Prevent the Use of Excessive Force During Arrests

46.     The allegations of paragraphs 1 through 45 are incorporated herein by reference.

-10-

47. The City of Chicago is a "person" within the meaning of 42 U.S.C. § 1983.

48. The constitutional deprivation of Plaintiff Thompson's Fourth and Fourteenth Amendment rights occurred on information and belief as a result of:

    a.     a widespread practice of failing to properly prevent the use of excessive force that is so permanent and well settled as to constitute a custom or usage of the Chicago Police Department with the force of law; and

    b.     the failure of the City of Chicago and Defendant Cline to properly screen, train, and supervise Chicago Police Officers.

49. Upon information and belief, multiple federal civil rights complaints have been filed in the United States District Court for the Northern District of Illinois against the City of Chicago Police Department and/or Defendant Cline alleging violations of the civil rights of those arrested by the Chicago Police Department. These civil rights complaints have alleged, among other conduct, that:

    a.     Chicago Police Officers tortured arrestees to obtain a confession through physical abuse;

    b.     Chicago Police Officers beat persons in their custody without provocation; and

    c.     Chicago Police Officers repeatedly struck persons in their custody and coerced them to cover up the officers' unlawful actions.

50. These allegations demonstrate a pattern of illegal conduct by employees and officers of the City of Chicago Police Department going beyond Plaintiff Thompson's allegations that deprive citizens of their constitutionally protected right to be free from excessive force.

51.     The City of Chicago and Defendant Cline's failure to properly screen its police force, failure to provide its police force with proper training and supervision regarding the appropriate techniques to be used in arresting suspects, and failure to reprimand those on its police force who use excessive force during an arrest violated Plaintiff Thompson's constitutionally protected right to be free from excessive force.

52.     Because the need for enhanced screening, training, and supervision of Chicago Police Officers is and was obvious and the inadequacy of training and supervision is and was likely to result in a violation of constitutional rights, Defendants City of Chicago and Cline acted with deliberate indifference to the rights of persons whom the officers of the Chicago Police Department come into contact with by failing to provide its police force with proper training and supervision.

53.     The City of Chicago's and Defendant Cline's failure to establish appropriate procedures to prevent and punish the use of excessive force during arrests directly and proximately caused Plaintiff Thompson to suffer substantial personal injuries and is entitled to damages under 42 U.S.C. § 1983.

## COUNT IV
### Section 1983 Claim Against Defendants Bryant, Martin, and John Does 6-20 for Deliberate Indifference to Serious Medical Needs

54.     The allegations of paragraphs 1 through 53 are incorporated herein by reference.

55.     As a pretrial detainee at the Cook County Jail, Plaintiff Thompson has a clearly established right under the Fourteenth Amendment to the United States Constitution to be free from deliberate indifference to a serious injury or medical need.

-12-

56.     Plaintiff Thompson suffered objectively serious medical injuries and had medical needs as a result of the beating by Defendant Chicago Police Officers Does 6-20 on December 15, 2003.

57.     As described in the foregoing paragraphs, Defendants Bryant, Martin, and John Does 6-20 intentionally and with deliberate indifference denied and/or delayed access to medical care after the Plaintiff was beaten and had objectively serious medical needs that required treatment.   Defendants Bryant, Martin, and John Does 6-20 exhibited deliberate indifference to Plaintiff Thompson's objectively serious medical needs, acting under color of state law, and violated Plaintiff Thompson's rights under the Fourteenth Amendment to the United States Constitution.  The conduct of Defendants Bryant, Martin, and John Does 6-20 was willful and exhibited a flagrant disregard for Plaintiff Thompson's constitutionally protected rights.

58.     As a direct and proximate result of the foregoing actions of Defendants Bryant, Martin, and John Does 6-20,   Plaintiff Thompson suffered substantial personal injuries and is entitled to damages under 42 U.S.C. § 1983.

## COUNT V
### Section 1983 Claim Against Defendants County of Cook, Baird, and Sheehan for a Custom and Practice of Deliberate Indifference to the Serious Medical Needs of Pretrial Detainees in the Cook County Jail and for Failure to Establish Appropriate Procedures To Prevent Deliberate Indifference to the Serious Medical Needs of Pretrial Detainees in the Cook County Jail

59.     The allegations of paragraphs 1 through 58 are incorporated herein by reference.

60.     The County of Cook, Illinois is a "person" within the meaning of 42 U.S.C. § 1983.

-13-

61.     The constitutional deprivation of Plaintiff Thompson's Fourteenth Amendment Rights occurred as a result of:

      a.     a widespread practice of failing to properly prevent deliberate indifference to the serious medical needs of pretrial detainees at the Cook County Jail that is so permanent and well settled as to constitute a custom or usage of the Cook County Department of Corrections and the Cook County Sheriffs Office; and

      b.     the failure of the Cook County Sheriffs Department and Defendants Sheahan and Baird to properly screen, train, and supervise the employees at the Cook County Jail.

62.     Upon information and belief, multiple federal civil rights complaints have been filed in the United States District Court for the Northern District of Illinois against Defendants Cook County, Sheahan, and/or Baird alleging violations of the civil rights of the pretrial detainees in the Cook County Jail. These civil rights complaints have alleged, among other conduct, that employees at the Cook County Jail acted with deliberate indifference to the serious medical needs of the pretrial detainees in their custody.

63.     These allegations demonstrate a pattern of illegal conduct by employees of the Cook County Sheriffs Department at the Cook County Jail going beyond Plaintiff Thompson's allegations that deprive pretrial detainees of their constitutionally protected rights.

64.     Defendants Cook County's, Sheahan's, and/or Baird's failure to properly screen the employees at the Cook County Jail, failure to provide the employees at the Cook County Jail with proper training and supervision regarding the appropriate techniques to be used with pretrial detainees, and failure to reprimand those employees at the Cook County Jail who violate the constitutionally protected rights of the pretrial detainees violated Plaintiff

Thompson's constitutionally protected right to receive prompt and effective medical care for his serious medical need under the Fourteenth Amendment.

65.     Because the need for enhanced screening, training, and supervision of the employees at the Cook County Jail is and was obvious and the inadequacy of training and supervision is and was likely to result in a violation of constitutional rights, Defendants County of Cook, Sheahan, and Baird acted with deliberate indifference to the rights of the persons whom the employees of the Cook County Jail come into contact with by failing to provide the employees of the Cook County Jail with proper training and supervision.

66.     Defendants County of Cook's, Sheahan's, and Baird's failure to establish appropriate procedures to prevent and punish the deliberate indifference of the employees of the Cook County Jail to the serious medical needs of the pretrial detainees in their custody directly and proximately caused Plaintiff Thompson to suffer substantial personal injuries and he is entitled to damaged under 42 U.S.C. § 1983.

## COUNT VI
### Indemnification Claim Against Defendants City of Chicago and County of Cook

67.     The allegations of paragraphs 1 through 66 are incorporated herein by reference.

68.     Pursuant to 745 ILCS 10/9-102, Defendants City of Chicago and County of Cook are empowered and directed to pay any tort judgment for compensatory damages and any associated attorneys' fees and costs for which it or one of its employees acting within the scope of his or her employment is liable.

69.     Defendant City of Chicago is liable for any judgment entered against it or against Defendants Cline, Czarnik, Wisz, and/or John Does 1-5 for compensatory damages as well as the associated attorney's fees and costs.

70.     Defendant Cook County is liable for any judgment entered against it or against Defendants Sheahan, Baird, Martin, Bryant, and/or John Does 6-20 for compensatory damages as well as the associated attorneys' fees and costs.

71.     In the event that a judgment for compensatory damages is entered against these defendants, Defendants City of Chicago and/or County of Cook must pay the judgment, as well as the associated attorneys' fees and costs.

WHEREFORE, Plaintiff Vernon Thompson requests that this Court grant the following relief, jointly and severally against the named Defendants:

A.     judgment for compensatory damages against all defendants jointly and severally in an amount to be determined at trial;

B.     judgment for punitive damages against all defendants jointly and severally in an amount to be determined at trial;

C.     an award of the costs of this action against all defendants jointly and severally, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and/or 18 U.S.C. § 1964(c);

D.     an order requiring Defendant Cook County to pay any judgment for compensatory damages entered against it or Defendants Sheahan, Baird, Martin, Bryant, and/or John Does 6-20, as well as the associated attorneys' fees and costs;

E.     an order requiring Defendant City of Chicago to pay any judgment for compensatory damages entered against it or Defendants Cline, Czarnik, Wisz, and/or John Does 1-5, as well as the associated attorneys' fees and costs; and

F.     such other and further relief that the court deems appropriate.

-16-

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully Submitted,

By: _Stephanie A. Scharf_

Stephanie A. Scharf (ARDC #6191616)
Zachary V. Moen (ARDC #6280643)
**Attorneys for Plaintiff Vernon Thompson**
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350
(312) 528-0484

Dated: August 9, 2004

PC 1137405